Plaintiff's Name GIOVANNI (a/k/a SHARON) GONZALES

Inmate No. WE9043

Address C.C.W.F 507-31-4Low

P.O. Box 1508

CHOWCHILLA, CA. 93610

NUMBER OF PAGES MAILED: ___

MAILED ON 3/20/2020

FILED
MAR 24 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GIOVANNI GONZALES (a/k/a SHARON GONZALES)
(Name of Plaintiff)

1:19-CV-01467-BAM
(Case Number)

VS.

RALPH DIAZ; GRACE SONG; ROBERT MITCHELL; C. PIERINI; S. GATES; DOES 1-50

(Names of all Defendants)

AMENDED CIVIL RIGHTS COMPLAINT UNDER:

☑ 42 U.S.C. 1983 (State Prisoner)

☐ **Bivens** Action [403 U.S. 388 (1971)] (Federal Prisoner)

RECEIVED
MAR 24 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

**I. Previous Lawsuits** (list all other previous or pending lawsuits on additional page):

   A. Have you brought any other lawsuits while a prisoner? Yes ___ No ✓

   B. If your answer to A is yes, how many? _____

   Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

   1. Parties to this previous lawsuit:

      Plaintiff _____

      Defendants _____

      _____

   2. Court (if Federal Court, give name of District; if State Court, give name of County)

      _____

   3. Docket Number _____ 4. Assigned Judge _____

   5. Disposition (Was the case dismissed? Appealed? Is it still pending?)

      _____

(pg.1)

6. Filing Date (approx.) _____     7. Disposition Date (approx.) _____

## II. Exhaustion of Administrative Remedies

**NOTICE:** Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. *Jones*, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

    A. Is there an inmate appeal or administrative remedy process available at your institution?

       Yes __✓__   No_____

    B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

       Yes __✓__   No_____

    C. Is the process completed?

       Yes __✓__        If your answer is yes, briefly explain what happened at each level.

I WAS DENIED AT ALL LEVELS OF MY GRIEVANCES, BECAUSE THEY SAID THAT MY SRS IS NOT CLINICALLY OR MEDICALLY NECESSARY BOTH THE INSTITUTIONAL LEVEL AND HEAD QUARTERS LEVEL GAVE SAME REASON.

       No_____        If your answer is no, explain why not.

## III. Defendants

List each defendant's full name, official position, and place of employment and address in the spaces below.  If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

    A. Name __RALPH DIAZ__ is employed as __SECRETARY OF THE CDCR__

       Current Address/Place of Employment __CALIFORNIA__

(Pg. 2)

B. Name GRACE SONG is employed as DEPUTY MEDICAL EXECUTIVE, UTILIZATION MANAGEMENT

Current Address/Place of Employment CALIFORNIA

C. Name ROBERT MITCHELL is employed as CHIEF MEDICAL EXECUTIVE

Current Address/Place of Employment CALIFORNIA

D. Name C. PIERINI is employed as CHIEF SUPPORT EXECUTIVE

Current Address/Place of Employment CALIFORNIA

E. Name S. GATES is employed as CHIEF OF HEALTH CARE CORRESPONDENCE AND APPEALS POLICY AND RISK MANAGEMENT SERVICES

Current Address/Place of Employment CALIFORNIA

(SEE CONT. pg. 3)

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

**Claim 1:** The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

FAILURE TO PROVIDE MEDICALLY NECESSARY SURGERY CRUEL AND UNUSUAL PUNISHMENT EIGHTH AMENDMENT, 42 U.S.C. 1983 (AGAINST DEFENDANTS DIAZ, SONG, MITCHELL, PIERINI, GATES, DOES 1-50)

Supporting Facts (Include all facts you consider important to Claim 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

DEFENDANT RALPH DIAZ ("DEFENDANT DIAZ") IS THE SECRETARY OF CDCR. AS SECRETARY, DEFENDANT DIAZ HAD ULTIMATE RESPONSIBILITY AND AUTHORITY FOR THE OPERATION OF CDCR, INCLUDING THE ADMINISTRATION OF HEALTH CARE AND IMPLEMENTATION OF MEDICAL CARE POLICIES GOVERNING CDCR. UPON INFORMATION AND BELIEF, DEFENDANT DIAZ IS A RESIDENT OF CALIFORNIA. HE IS BEING SUED IN HIS OFFICIAL CAPACITY. DEFENDANT GRACE SONG ("DEFENDANT SONG") IS OR WAS THE DEPUTY MEDICAL EXECUTIVE OF UTILIZATION MANAGEMENT. ON INFORMATION AND BELIEF, DEFENDANT SONG ALSO SERVED AS

(pg. 3)

THE CHAIR OF THE STATEWIDE MEDICAL AUTHORIZATION REVIEW TEAM (SMART) AND THE GENDER AFFIRMING SURGERY REVIEW COMMITTEE (GASRC) IN FEBRUARY 2019, DEFENDANT SONG ANNOUNCED THE FINAL DENIAL OF PLAINTIFF SEX REASSIGNMENT SURGERY REQUEST. UPON INFORMATION AND BELIEF, DEFENDANT SONG IS A RESIDENT OF CALIFORNIA. SHE IS BEING SUED IN HER OFFICAL CAPACITY.

DEFENDANT ROBERT MITCHELL ("DEFENDANT MITCHELL") IS THE CHIEF MEDICAL EXECUTIVE OF CCWF. IN MARCH 2019 DEFENDANT MITCHELL HAD ALSO ANNOUNCED THE DENIAL OF PLAINTIFF SEX REASSIGNMENT SURGERY REQUEST. UPON INFORMATION AND BELIEF, DEFENDANT MITCHELL IS A RESIDENT OF CALIFORNIA. HE IS BEING SUED IN HIS OFFICIAL CAPACITY.

DEFENDANT C. PIERINI ("DEFENDANT PIERINI") IS OR WAS THE CHIEF SUPPORT EXECUTIVE DEFENDANT HAD ULTIMATE AUTHORITY OVER PLAINTIFFS REQUEST FOR INTERVENTION OVER HIS SEX REASSIGNMENT SURGERY DEFENDANT PIERINI DENIED INTERVENTION AT INSTITUTIONAL (SEE CONT. CLAIM 1 PG. 4)(1,2,3,4,5,6.)

**Claim 2:** The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

VIOLATION OF EQUAL PROTECTION BY IMPOSING A DISPARATE PROCEDURE THAT INHIBITS ACCESS TO MEDICALLY NECESSARY TREATMENT BASED ON GENDER OR TRANSGENDER STATUS FOURTEENTH AMENDMENT, 42 U.S.C. 1983 (AGAINST DEFENDANTS DIAZ, SONG, MITCHELL, PIERINI, GATES, DOES 1-50)

Supporting Facts (Include all facts you consider important to Claim 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 2.):

PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS OF CLAIM 1. AS IF FULLY SET FORTH HEREIN. THE SRS POLICY REQUIRES CDCR AND CCHCS TO DENY SRS WITHOUT CONSIDERATION OF WHETHER THE TREATMENT IS MEDICALLY NECESSARY. THE 2016 SRS GUIDELINES ESTABLISHED ELEVEN CRITERIA FOR CONSIDERATION AS PART OF ITS REVIEW TO DETERMINE WHETHER TO GRANT OR DENY SRS, INCLUDING WHETHER:

a.) AT LEAST 2 YEARS REMAIN BEFORE [THE PRISONER'S] ANTICIPATED PAROLE DATE. B.) THE PATIENT HAS BEEN PROVIDED WITH NECESSARY AND RELEVANT INFORMATION TO ENABLE HIM/HER TO UNDERSTAND THAT HIS/HER ENVIRONMENT WILL BE EVALUATED AFTER SURGERY AND ANY NEW ENVIRONMENT MAY BE UNFAMILIAR AND POSE SIGNIFICANT ADAPTIVE CHALLENGES. THE PATIENT UNDERSTANDS THAT APPROPRIATE POST-OPERATIVE PLACEMENT WILL BE ON A CASE-BY-CASE BASIS BY CDCR CUSTODY STAFF. C.) THE PATIENT CAN BE EXPECTED TO SUCCESSFULLY AND SAFELY TRANSFER AND ADJUST MEDICALLY AND PSYCHOLOGICALLY TO CONFINEMENT POSTOPERATIVELY. THESE CRITERIA ARE INCONSISTENT WITH THE WPATH STANDARDS OF CARE FOR THE TREATMENT OF GENDER DYSPHORIA. THEY ARE ALSO NOT

(Pg. 4)

CRITERIA CONSIDERED WHEN DETERMINING THE MEDICAL NECESSITY OF ANY OTHER MEDICAL TREATMENT PROVIDED TO CDCR PRISONERS. FIRST, THE GASRC IS INSTRUCTED, AS A MATTER OF CDCR POLICY, TO REJECT REQUESTS FOR SRS FROM A PATIENT WHO DOES NOT HAVE AT LEAST TWO YEARS REMAINING BEFORE HIS OR HER ANTICIPATED PAROLE OR RELEASE DATE, REGARDLESS OF WHETHER SRS IS MEDICALLY NECESSARY BEFORE THE RELEASE DATE. INDEED, CDCR AND CCHCS HAVE INSTRUCTED CDCR INSTITUTIONS NOT TO SUBMIT A PATIENT'S REQUEST FOR SRS TO THE GASRC FOR FULL REVIEW IF THE PATIENT'S ANTICIPATED PAROLE DATE IS TWO YEARS OR LESS FROM THE DATE OF REVIEW. THUS, UNDER THE 2016 SRS GUIDELINES, CUSTODY FACTORS ALONE CAN BE THE BASIS FOR DENYING REQUESTS FOR SRS FROM PRISONERS FOR REASONS ENTIRELY UNRELATED TO WHETHER THE TREATMENT IS MEDICALLY NECESSARY. A CISGENDER INMATE SEEKING THE SAME TREATMENT AS A TRANSGENDER INMATE WOULD NOT BE DISQUALIFIED FROM TREATMENT BECAUSE

(SEE CONT. Pg. 5)

## V. Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statues.

WHEREFORE, PLAINTIFF PRAYS FOR JUDGEMENT AGAINST DEFENDANTS AS FOLLOWS:

a.) ENTER INJUNCTIVE RELIEF ENJOINING DEFENDANTS TO PROVIDE PLAINTIFF WITH MEDICALLY NECESSARY SURGERIES TO TREAT HIS SIGNIFICANT DISTRESS FROM GENDER DYSPHORIA; b.) ENTER INJUNCTIVE RELIEF DECLARING CDCR AND CCHS POLICIES REGARDING SRS AS A TREATMENT FOR GENDER DYSPHORIA, REFLECTED, AT A MINIMUM, IN THE TEMPORARY AMENDMENTS TO CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTION 3350.1 (e), UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO PLAINTIFF; c.) AWARD REASONABLE ATTORNEYS' FEES AND COST TO PLAINTIFF PURSUANT TO 42 U.S.C. SECTION 1988; AND d.) SUCH OTHER RELIEF AS THE COURT FINDS APPROPRIATE IN THE INTEREST OF JUSTICE.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 3/19/2020        Signature of Plaintiff: S. Gonzales

(Revised 4/4/14)

(pg. 5)

(CONT. PG. 3 DEFENDANTS)

F. NAME DOES 1-50 IS EMPLOYED AS STATE WIDE MEDICAL AUTHORIZATION REVIEW TEAM ("SMART") GENDER AFFIRMING SURGERY REVIEW COMMITTEE ("GASRC") CURRENT ADDRESS/PLACE OF EMPLOYMENT CALIFORNIA

(CONT. PG. 3 DEFENDANTS)

1. LEVEL FOR PLAINTIFFS HEALTH CARE GRIEVANCE. UPON INFORMATION AND BELIEF,
2. DEFENDANT PIERINI IS A RESIDENT OF CALIFORNIA. HE OR SHE IS BEING SUED IN HIS OR
3. HER OFFICIAL CAPACITY.
4. DEFENDANT S. GATES ("DEFENDANT GATES") IS OR WAS THE CHIEF HEALTH CARE
5. CORRESPONDENCE AND APPEALS BRANCH POLICY AND RISK MANAGEMENT SERVICES
6. CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES. IN JULY 2019, DEFENDANT GATES
7. ANNOUNCED THE FINIAL DENIAL OF PLAINTIFFS HEALTH CARE GRIEVANCE AT THE
8. HEADQUARTERS LEVEL FOR INTERVENTION ON HIS SEX REASSIGNMENT SURGERY. UPON
9. INFORMATION AND BELIEF, DEFENDANT GATES IS A RESIDENT OF CALIFORNIA. HE OR SHE
10. IS BEING SUED IN HIS OR HER OFFICIAL CAPACITY.
11. DEFENDANT DOES 1-50 ARE SUED UNDER ALIASES BECAUSE THEIR IDENTITIES ARE
12. UNKNOWN TO PLAINTIFF. DEFENDANTS DOES 1-50 ARE LIKELY MEMBER OF THE ("SMART")
13. STATEWIDE MEDICAL AUTHORIZATION REVIEW TEAM, AND THE ("GASRC") GENDER
14. AFFIRMING SURGERY REVIEW COMMITTEE. AS MEMBERS OF THE SMART AND THE
15. GASRC THESE DEFENDANTS HAD AUTHORITY TO GRANT OR DENY PLAINTIFFS
16. ACCESS TO GENDER TRANSITION SURGERIES AND ARE RESPONSIBLE FOR DENYING
17. PLAINTIFF ACCESS TO MEDICALLY NECESSARY CARE IN VILATION OF THE LAW
18. UPON INFORMATION AND BELIEF, THE MEMBERS OF THE SMART AND THE
19. GASRC ARE RESIDENTS OF CALIFORNIA.
20. PLAINTIFF RESERVES THE RIGHT, CONSISTENT WITH APPLICABLE RULES AND
21. ORDERS, TO AMEND THIS COMPLAINT TO INCLUDE OTHER OFFICIALS AND PARTIES
22. AS LEGALLY NECESSARY AND FOR THE COURT TO GRANT THE INJUNCTIVE RELIEF
23. REQUESTED HEREIN.
24. PLAINTIFF, A TRANSGENDER MAN, SUFFERS FROM SEVERE GENDER DYSPHORIA.
25. SINCE 2017, PLAINTIFF HAS RECIEVED HORMONE REPLACEMENT THERAPY TO TREAT
26. HIS CONDITION; HOWEVER, THAT TREATMENT HAS NOT ADEQUATELY REDUCED HIS
27. SYMPTOMS OF GENDER DYSPHORIA. BECAUSE HORMONE THERAPY ALONE HAS NOT
28. ALLEVIATED HIS GENDER DYSPHORIA, PLAINTIFF CONTINUES (CONT CLAIM 1 pg. 4) ① of 6

to suffer from severe anxiety, depression, and distress caused by the incongruity between his body and his gender identity. To address those serious medical needs, plaintiff inquired with his treating medical providers at CDCR about sex reassignment surgery ("SRS"). Leading medical research and the well-established and widely accepted medical standards of care all recognizes SRS as a medically necessary treatment for severe cases of gender dysphoria.

Plaintiff's background and gender dysphoria.

Plaintiff was born Sharon Gonzales on June 15, 1990 in San Jose, CA. Everyday life in his home was hard. His mother was into the bible and god. She had difficulty accepting the plaintiff. She verbally abused him. She frequently utilized corporal punishment. When plaintiff displayed masculine behaviors plaintiff would be humiliated when she required plaintiff to wear girls clothing. She would get angry and spank him stating your not a boy. At age three or four plaintiff used scissors to cut his hair bald. When plaintiff started elementary school he frequently would wet his pants because he was ashamed to use the girls bathroom. At the age of fourteen the plaintiff's relationship with his mother had changed for the better. The plaintiff was caught making out with his girlfriend at school. The administration was going to call his mother and send him home until the plaintiff implored them not to do so because his mother would beat him. At that point, the decision was made to place him in a local shelter. His mother persistently called the shelter, but he was afraid to discuss the situation with her. However, when the plaintiff eventually returned home his mother's perception of him had changed. She accepted the plaintiff identity. She became his best friend. After that the plaintiff was able to dress and act the way he wanted. Mr. Gonzales has maintained his gender identity and has always presented himself as a man while in custody of CDCR. At present, he is housed in a women's correctional facility, the Central California Women's Facility ("CCWF")

(CONT. CLAIM 1 pg. 4) 2. OF 6.

in Chowchilla, California. Upon receiving a diagnosis for gender dysphoria in 2015, plaintiff's doctors determined that it was medically necessary for him to recieve treatment for his condition. The treatment was designed to bring plaintiff's body into greater conformity with his gender identity. Plaintiff began his first treatment for gender dysphoria on April 27, 2017 a hormone replacement therapy treatment in the form of testosterone injections. Plaintiff was also given issued boxer briefs and male clothes to treat his gender dysphoria. Mr. Gonzales experienced serious side effects from hormone replacement treatment that have significantly worsened his gender dysphoria. Specifically, plaintiff's breast size increased from 34B to 34C. The increase in breast size exacerbated plaintiff's gender dysphoria as female sex characteristics that do not conform to plaintiff's gender identity have become more prominent. In response to the adverse side effects of hormone therapy, plaintiff has been required to bind his chest as a treatment method, physically flattening his breast tissue to create a chest that more closely conforms to his gender identity. Due to binding his chest, plaintiff suffers from rashes and ongoing physical discomfort. Prior to being taken into custody plaintiff struggled with thoughts of harming himself because of his incongruent gender identity especially when he became pubescent. Plaintiff is currently struggling with similar triggers for suicidal ideation because of the puberty like phyiscal changes caused by ongoing hormone therapy such as increased in breast size. Mr. Gonzales avoids looking at himself at all because his physical appearance does not conform with his gender identity. Plaintiff plagued with feelings of "displacement" because the hormone therapy has not adequately treated his gender dysphoria. In 2018, plaintiff approached his primary care physician ("PCP") Dr. Martha Garcia, M.D., about the limitations of the hormone therapy and requested that he be considered for sex reassignment surgery ("SRS") plaintiff's doctor reviewed the "Guidelines for Sex Reassignment Surgery" and confirmed

PLAINTIFF'S ELIGIBILITY. MR. GONZALES HAS YET TO ACHIEVE FULL MASCULINIZATION OF HIS BODY WITH TESTOSTERONE TREATMENT ALONE. PLAINTIFF'S MEDICAL RECORDS INDICATE HE HAS REPORTED TO HIS TREATING PROVIDERS, MULTIPLE TIMES, THAT HE IS NOT SATISFIED WITH THE MASCULINIZATION OF HIS BODY THROUGH HORMONE THERAPY ALONE. HE RESISTS DECREASES OR CHANGES TO HIS HORMONE REGIMEN DUE TO HIS DISTRESS OVER THE PRESCRIBED TREATMENT NOT ADEQUATELY REDUCING HIS SYMPTOMS OF GENDER DYSPHORIA. PLAINTIFF CONSISTENTLY EXHIBITS SYMPTOMS OF ANXIETY AND DEPRESSION RELATED TO GENDER DYSPHORIA. PLAINTIFF'S TREATING MENTAL HEALTH PROVIDERS REPORTS THAT HE HAS EXHIBITED SIGNIFICANT DISTRESS ABOUT THE HORMONE THERAPY IS NOT ENOUGH. GENDER DYSPHORIA OFTEN COME WITH SEVERE MENTAL ANGUISH AND THE INABILITY TO FUNCTION NORMALLY AT SCHOOL, AT WORK OR RELATIONSHIP. MOREOVER, THOSE SUFFERING FROM GENDER DYSPHORIA OFFTEN BECOME SOCIALLY OSTRACIZED AND STIGMATIZED, WHICH FURTHER DIMINISHES SELF-ESTEEM. ALTHOUGH GENDER DYSPHORIA ON ITS OWN IS NOT CONSIDERED A LIFE THREATENING ILLNESS, WHEN NOT PROPERLY TREATED, IT IS OFTEN ASSOCIATED WITH DANGEROUS RELATED CONDITIONS SUCH AS DEPRESSION, SUBSTANCE RELATED DISORDERS, SELF-MUTILATION, AND SUICIDE. WITHOUT TREATMENT, THE PATH FOR THOSE SUFFERING GENDER DYSPHORIA CAN BE TORTUROUS, AS EVIDENCE BY SHOCKINGLY HIGH SUICIDE ATTEMPT RATES. NEARLY EVERY STUDY TO DATE HAS CONCLUDED SRS IS AND EFFECTIVE TREATMENT FOR GENDER DYSPHORIA. IN DEED CALIFORNIA, BOTH MEDICAID AND PRIVATE HEALTH INSURANCE PLANS ARE LEGALLY REQUIRED TO OFFER COVERAGE FOR HEALTH CARE TREATMENT RELATED TO GENDER TRANSITIONS, INCLUDING SRS. DEFENDANTS UNLAWFULLY DENIED PLAINTIFF ACCESS TO MEDICALLY NECESSARY SRS. ON NOVEMBER 27, 2018, DR. CHRIS GLASS, PSY.D., PLAINTIFF'S TREATING PSYCHOLOGIST, COMPLETED AND SUBMITTED THE "CDCR INSTITUTION EVALUATION FOR CONSIDERATION OF SEX REASSIGNMENT SURGERY." ON SEPTEMBER 17, 2018 DR. MARTHA GARCIA, PLAINTIFF'S PCP SUBMITTED A FORM, PHYSICIAN REQUEST FOR SERVICES (RFS) FOR PLAINTIFF'S SRS INDICATING THAT HE HAD BEEN ON HORMONES WAS EVALUATED WITH CLINICAL PSYCHOLOGIST AND MEDICAL AS PATIENT WANTS TO BE MALE AND REQUEST SRS. ON FEBRUARY 5, 2019 GRACE SONG ALONG WITH THE SMART AND THE GASRC DENIED PLAINTIFF'S REQUEST FOR SRS, DESPITE PLAINTIFF'S WELL DOCUMENTED

CASE OF SEVERE GENDER DYSPHORIA AND RESULTING MENTAL ANGUISH THE DENIAL STATED" IT'S NOT MEDICALLY NECESSARY AND THE CURRENT TREATMENT FOR GENDER DYSPHORIA PROVIDED TO GONZALES, SHARON CDCR# WE9043 DOES PROVIDE SIGNIFICANT RELIEF THAT IS ADEQUATE AND SUFFICIENT FOR THEIR CONDITION A FINDING OF NOT APPROVED FOR PATIENT-INMATE GONZALES REQUEST FOR SEX REASSIGNMENT SURGERY." COUNTER TO ALL MEDICAL AND MENTAL HEALTH LITERATURE ON PROVIDING COMPETENT MEDICAL AND MENTAL HEALTH CARE, THE DENIAL LETTER REFERS AND USES "THEIR CONDITION" INSTEAD OF ACKNOWLEDGING PLAINTIFF AS "HIS CONDITION" TO REFERENCE THE PLAINTIFF AS A INDIVIDUAL WHICH RESULTED IN AN INCREASE IN PLAINTIFF'S SYMPTOMS OF GENDER DYSPHORIA UPON RECEIPT OF THE DENIAL. THE FAILURE TO RECOGNIZE AND AFFIRM PLAINTIFF'S GENDER IDENTITY EVIDENCES THE INCOMPETENCE REGARDING HIM AND THE DIAGNOSIS AND TREATMENT OF GENDER DYSPHORIA BY THE SRS DECISION MAKERS AND AGAIN ILLUSTRATING DELIBERATE INDIFFERENCE BY THE DEFENDANTS TO THE PLAINTIFF'S SERIOUS MEDICAL CONDITION. DEFENDANTS HAVE FAILED TO TAKE ANY REASONABLE MEASURES TO ADDRESS THE ONGOING MENTAL ANGUISH THAT PLAINTIFF SUFFERS DUE TO GENDER DYSPHORIA, WHICH IS NOT FULLY ADDRESSED BY THE HORMONE THERAPY THAT PLAINTIFF HAS BEEN RECIEVING. DEFENDANTS FAILURE TO ADDRESS PLAINTIFF'S REQUEST FOR MEDICALLY NECESSARY SRS WAS UNREASONABLE AND MANIFESTED A WANTON DISREGARD FOR APPROPRIATE TREATMENT OF PLAINTIFF'S GENDER DYSPHORIA BASED ON HIS HISTORY DOCUMENTED IN MEDICAL AND MENTAL HEALTH RECORDS AND THE PRUDENT PROFESSIONAL STANDARDS EMBODIED BY THE WPATH STANDARDS OF CARE, THE SMART AND THE GASRC, GRACE SONG, ROBERT MITCHELL RESPONSE TO PLAINTIFF'S REQUEST FOR SRS AND THE COMMITTEE'S REFUSAL TO CONSIDER PLAINTIFF'S FAILED HORMONE THERAPY DEMONSTRATES THAT DEFENDANTS WERE FULLY AWARE OF PLAINTIFF'S DIAGNOSED GENDER DYSPHORIA BUT WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEED FOR SRS. ON MARCH 4, 2019 PLAINTIFF RECIEVED THE MEMORANDUM OF THE DENIAL. THE SAME DAY PLAINTIFF RECIEVED THE DENIAL PLAINTIFF FILED A HEALTH CARE GRIEVANCE FOR REVERSAL AND INTERVENTION ON THE DENIAL FOR SRS. ON APRIL 22, 2019 PLAINTIFF WAS DENIED BY C. PIERINI AT THE INSITUTIONAL LEVEL AGAIN PLAINTIFF FILED A HEALTH CARE GRIEVANCE TO THE NEXT LEVEL BUT AGAIN WAS DENIED ANY INTERVENTION (CONT. CLAIM 1 pg. 4) 5 of 6

BY S. GATES ON JULY 26, 2019 AT THE HEAD QUARTERS LEVEL. NO MATTER ALL PLAINTIFF'S DOCUMENTED REPORTS OF DEPRESSION AND ANXIETY DUE TO GENDER DYSPHORIA. NONE OF THE DEFENDANTS DID ANYTHING TO HELP PLAINTIFF. THE PLAINTIFF HAD TO GET ON MEDICATE AFTER BEING DENIED SRS HE IS CURRENTLY STILL ON MEDICATION FOR ANXIETY. PLAINTIFF HAS ALL THE DOCUMENTS TO VERIFY EVERYTHING THAT THE PLAINTIFF SAYS IS TRUE. PLAINTIFF HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES WITH RESPECT TO THE CLAIMS HEREIN. PLAINTIFF HAS BEEN DIAGNOSED WITH THE SERIOUS MEDICAL CONDITION OF GENDER DYSPHORIA SINCE 2015. PLAINTIFF STARTED HORMONE THERAPY IN 2017 WHICH DESPITE MORE THAN 2 YEARS OF HORMONE THERAPY, CONTINUES TO CAUSE PLAINTIFF SERIOUS MENTAL DISTRESS AND ADVERSE PHYSICAL SIDE EFFECTS, AND REQUIRES TREATMENT IN THE FORM OF SRS UNDER PREVAILING MEDICAL STANDARD OF CARE. EACH DEFENDANT ACTING IN THEIR OWN OFFICIAL CAPACITY AND COLOR OF STATE LAW WAS AND REMAINS DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEED FOR SRS. DEFENDANT'S DENIAL OF MEDICALLY NECESSARY TREATMENT FOR PLAINTIFF'S GENDER DYSPHORIA ON MARCH 4, 2019 CONTINUES TO FORCE HIM TO LIVE EVERY MINUTE OF EVERY DAY IN A BODY THAT DOES NOT MATCH HIS DEEPLY ROOTED, LIFELONG GENDER IDENTITY, CAUSING IRREPARABLE HARM. EACH DEFENDANT KNEW OF PLAINTIFF'S SERIOUS MEDICAL NEED FOR SRS AND DISREGARDED PLAINTIFF NEED AND FAILED TO TAKE ANY REASONABLE MEASURES TO ADDRESS PLAINTIFF'S CONTINUED PAIN AND SUFFERING RESULTING FROM HIS GENDER DYSPHORIA. DEFENDANTS DISCRIMINATOR DENIAL OF SRS IS CAUSING IRREPARABLE HARM TO PLAINTIFF INCLUDING SEVERE ANXIETY AND DEPRESSION AS A RESULT OF THE DISCREPANCY BETWEEN HIS SEX CHARACTERISTICS AND HIS GENDER IDENTITY. BY FAILING TO PROVIDE SRS TO PLAINTIFF WHILE INCARCERATED DEFENDANTS HAVE DEPRIVED PLAINTIFF HIS RIGHT TO MEDICALLY NECESSARY TREATMENT GUARANTEED BY EIGTH AMENDMENT TO THE U.S.C. AND CAUSED THE PLAINTIFF CRUEL UNUSUAL PUNISHMENT VIOLATING HIS EIGHTH AMENDMENT USC.

OF A POTENTIAL TO PAROLE WITHIN TWO YEARS. SECOND, THE 2016 SRS GUIDELINES REQUIRE THE GASRC TO CONSIDER CRITERIA RELATED TO HOUSING ARRANGEMENTS AND CONFINEMENT TRANSFERS AS PART OF THEIR CONSIDERATION OF SRS REQUESTS, INCLUDING "POST-OPERATIVE PLACEMENT" AND WETHER THE "PATIENT CAN BE EXPECTED TO SUCCESSFULLY AND SAFELY TRANSFER AND ADJUST MEDICALLY AND PSYCHOLOGICALLY TO CONFINEMENT POSTOPERATIVELY." THESE CRITERIA DIRECTLY CONTRADICT WPATH's EXPLICIT PROHIBITION ON CONSIDERATIONS RELATED TO "INSTITUTIONALIZATION OR HOUSING ARRANGEMENTS" WHEN DETERMINING ACCESS TO MEDICALLY NECESSARY TREATMENTS FOR GENDER DYSPHORIA. THIRD, PATIENTS WHO ARE NOT APPROVED FOR SRS ARE BARRED FROM SUBMITTING A NEW SRS REQUEST UNTIL A YEAR HAS LAPSED REGARDLE OF WHETHER SRS BECOMES MEDICALLY NECESSARY DURING THAT YEAR. AS A RESULT, IT IS CDCR POLICY TO REJECT CERTAIN REQUESTS FOR SRS EVEN IF SRS WOULD BE MEDICALLY NECESSARY TO TREAT AN INMATE'S GENDER DYSPHORIA. A CISGENDER PRISONER AND HIS OR HER TREATMENT PROVIDERS WOULD NOT BE REQUIRED TO WAIT AN ADDITIONAL YEAR BEYOND THE SMART's DENIAL TO RESUBMIT A REQUEST FOR TREATMENT, AS CDCR REQUIRES TRANSGENDER PRISONERS AND THEIR TREATMENT PROVIDERS TO DO, REGARDLESS OF WHEN THE TREATMENT BECOMES MEDICALLY NECESSARY. RECENT AMENDMENTS TO TITLE 15 CODIFY THE 2016 SRS GUIDELINES AND PERPETUATE CONSTITUTIO VIOLATIONS. THE POST-NORSWORTHY TEMPORARY AMENDMENT TO CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTION 3350.1, ENTACTED ON AUGUST 1, 2018, IS ENTITLED: "TREATMENT EXCLUSIONS." THIS AMENDMENT EFFECTIVELY CODIFIES THE EXISTING PROCEDURES ALREADY IMPLEMENTED UNDER THE 2016 SRS GUIDELINES. IT LISTS SRS AMONG THE TREATMENT EXCLUSIONS, AND REQUIRES REQUEST FOR SRS, ALONE AMONG THE EXCLUSIONS LISTED, TO UNDERGO THE ONEROUS GASRC REVIEW PROCESS. THE RELEVANT SECTION STATES: NOTWITHSTANDING SECTION 3350.1(b), SEX REASSIGNMENT SURGERY (SRS) CASES SHALL BE REFERRED TO THE GAS REVIEW COMMITTEE AND SMART FOR A DECISION TO TREAT. THE PCP AND INSTITUTIONAL UM COMMITTEE SHALL NEITHER RECOMMEND APPROVAL OR DENIAL TO REQUESTS FOR SRS SURGERY. AS WITH THE 2016 SRS GUIDELINES, THE TEMPORARY AMENDMENTS TO TITLE 15 PROHIBIT THE MEDICAL PRIMARY CARE PROFESSIONALS WHO TREAT THEIR PATIENT FROM OPINING ON THEIR PATIENTS' REQUESTS FOR SRS. THE INSTITUTIONAL UM COMMITTEE MEMBERS AT THE PRISON SITE WHO ARE MORE

knowledgeable of the patient's medical needs are statutorily prohibited from opining on SRS requests. By comparison, any other specialty outpatient treatment that may be deemed medically necessary for cisgender people for reasons other than gender dysphoria, such as, bilateral mastectomy, hysterectomy, cystocele, or rectocele, would undergo a different procedure that allows the treating provider and institution medical administration to recommend the medically necessary treatment. For these other medical treatments, CDCR's policies for the determination of medical necessity do not prohibit the medical providers and the IUMC from recommending approval or denial of the treatment, even for treatments explicitly excluded under Title 15 Section 3350.1 Therefore, CDCR's new policy for evaluating requests for SRS is more onerous than the previous Title 15 policy, found to be constitutionally suspect in Norsworthy, and prohibits a patients treatment provider and institution's UM committees from recommending medically necessary treatment for their patients, the Title 15 temporary amendments also contravene other gender dysphoria policy guidance issued by CDCR, which rightly places great weight on the treating primary care and mental health providers opinions. CDCR's gender dysphoria care guide and management policies, enact pre Norsworthy, state that the care guide "should be given great weight in the decision-making process, but is not a substitute for the clinical judgement of the primary care provider or mental health professional." See CDCR's Inmate Medical Services Policy and Procedures Volume 4: Medical Services, Chapter 26: 4.26 Gender Dysphoria Management Policy, (Oct. 29, 2018, 12:00 pm), https://cchc.ca.gov/wp-content/uploads/sites/60/2017/08/IMSPP-v04-ch26.pdf. Under that policy regime, medical providers had begun to recommend SRS as a treatment for patients with gender dysphoria. In response, with the 2016 SRS guidelines and subsequently, the Title 15 temporary amendments, CDCR and CCHCS took away the power for treating medical providers and IUMC's to recommend SRS directly for the patients they treat, interfering with best practices as recognized by CDCR's own gender dysphoria policies. California Code of Regulations Title 15 3350.1 provides that certain procedures are excluded from treatment. Section 3350.1(c) provides the final categorical exclusion listed

1. UNDER THIS SECTION, SRS IS NOT CATEGORICALLY EXCLUDED UNDER SECTION
2. 3350.1(c). CONSISTENT WITH OTHER EXPLICIT EXCLUSIONS IN THIS SECTION OF TITLE 15, CDCR
3. REQUIRES A SPECIFIC PROCEDURE TO DETERMINE IF A TREATMENT EXCLUSION MAY BE MEDICALLY
4. NECESSARY FOR A SPECIFIC INDIVIDUAL. HOWEVER, IN THE CASE OF SRS, CDCR REQUIRES, AS A
5. MATTER OF POLICY, TRANSGENDER AND OTHER NON-CISGENDER PRISONERS SEEKING TREATMENT FOR
6. GENDER DYSPHORIA TO UNDERGO A DIFFERENT AND MUCH MORE ONEROUS PROCESS THAN THE ONE
7. REQUIRED OF CISGENDER INMATES SEEKING THE SAME PROCEDURES. THIS REGULATORY SCHEME IS
8. FACIALLY DISCRIMINATORY AGAINST TRANSGENDER AND NON-CISGENDER PRISONERS SEEKING
9. TREATMENT FOR GENDER DYSPHORIA BECAUSE IT MAKES MEDICALLY NECESSARY SURGERIES
10. UNAVAILABLE FOR SUCH PRISONERS BUT ALLOWS THE TREATMENT FOR CISGENDER PRISONERS IN
11. CERTAIN CONDITIONS WHERE BY THE SAME TREATMENT IS MEDICALLY NECESSARY (E.G. HYSTERECTOMY,
12. BILATERAL MASTECTOMY, RECTOCELE, CYSTOCELE). EACH DEFENDANT APPLIED THE STATUTE IN A MANNER
13. THAT DISCRIMINATED AGAINST PLAINTIFF ON THE BASIS OF HIS GENDER AND TRANSGENDER STATUS. IN
14. CONSIDERING PLAINTIFF'S NEED FOR SRS, EACH DEFENDANT FAILED TO GIVE PROPER CONSIDERATION TO THE
15. SPECIFIC CIRCUMSTANCES OF PLAINTIFF'S GENDER DYSPHORIA AND NEED FOR SRS. INSTEAD,
16. DEFENDANTS BASED THEIR CONCLUSIONS ON PROCEDURES AND CRITERIA THEY WOULD NOT HAVE
17. CONSIDERED IN DETERMINING THE MEDICAL NECESSITY OF TREATMENT FOR A CISGENDER
18. PRISONER'S REQUEST FOR MEDICALLY-NECESSARY SURGERY. EACH DEFENDANT REGARDED AND
19. APPLIED CDCR AND CCHCS POLICY TO REQUIRE MORE ONEROUS PROCEDURES, WHICH CONSIDER
20. FACTORS OTHER THAN WHETHER THE TREATMENT IS MEDICALLY NECESSARY, SOLELY BECAUSE PLAINTIFF
21. WAS ASSIGNED FEMALE AT BIRTH BUT IS A TRANSGENDER MAN. DEFENDANTS INTENTIONALLY
22. TREAT PLAINTIFF DIFFERENTLY FROM CISGENDER PRISONERS SEEKING SIMILAR TREATMENT (E.G.
23. MASTECTOMY, HYSTERECTOMY, OVARIECTOMY, VAGINECTOMY) BECAUSE OF HIS GENDER AND TRANSGENDER
24. STATUS. DUE TO THE DIFFERENCE IN TREATMENT, SIMILARLY SITUATED CISGENDER WOMEN WITH SERIOUS
25. MEDICAL NEEDS ARE ABLE TO RECIEVE ADEQUATE MEDICAL CARE, INCLUDING MEDICALLY NECESSARY
26. MASTECTOMIES, HYSTERECTOMIES, VAGINELTOMIES AND OVARIECTOMIES, BUT TRANSGENDER
27. PRISONERS ASSIGNED FEMALE AT BIRTH REQUIRING SUCH TREATMENT ARE EITHER BARRED FROM
28. RECEIVING IT OR AT A MINIMUM HELD TO A MUCH MORE ONEROUS STANDARD. THE DIFFERENCE IN

1. TREATMENT BETWEEN TRANSGENDER PRISONERS AND CISGENDER PRISONERS DOES NOT FURTHER ANY
2. IMPORTANT GOVERNMENT INTEREST IN A WAY THAT IS SUBSTANTIALLY RELATED TO THAT INTEREST,
3. NOR IS IT RATIONALLY RELATED TO ANY LEGITIMATE GOVERNMENT INTEREST. DEFENDANT'S
4. DISCRIMINATORY DENIAL OF SRS IS CAUSING IRREPARABLE HARM TO PLAINTIFF, INCLUDING
5. SEVERE ANXIETY AND DISTRESS DUE TO THE DISCREPANCY BETWEEN HIS REMAINING
6. FEMALE SEX CHARACTERISTICS AND HIS MALE IDENTITY. PLAINTIFF'S MENTAL ANGUISH
7. IS INTENSIFIED BY THE FACT - REPEATEDLY ESTABLISHED IN HIS MEDICAL RECORDS - THAT
8. PLAINTIFF HAS BEEN LIVING AS A MAN ALL HIS LIFE AND HAS BEEN RECIEVING HORMONE
9. THERAPY SINCE 2017 YET IS BEING FORCED TO LIVE EVERY MINUTE OF EVERY DAY IN A BODY WITH
10. FEMALE ANATOMY THAT DOES NOT MATCH HIS DEEPLY ROOTED IDENTITY. BY FAILING TO PROVIDE
11. SRS TO PLAINTIFF WHILE INCARCERATED, DEFENDANTS HAVE DEPRIVED PLAINTIFF OF HIS RIGHT TO
12. EQUAL PROTECTION UNDER THE LAWS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE
13. UNITED STATES CONSTITUTION.