# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNI GONZALES (*Aka* Sharon Gonzales),<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 1:19-cv-01467-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 12)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Giovanni Gonzales, aka Sharon Gonzales ("Plaintiff"),[1] is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's first amended complaint, filed on March 24, 2020, is currently before the Court for screening. (ECF No. 12.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

---

[1] Plaintiff was born female but is a transgender man. For purposes of this screening order, where a pronoun is used to identify Plaintiff, the pronouns "he" and "his" will be used.

1

or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed at Central California Women's Facility at Chowchilla ("Chowchilla"), where the events detailed in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Ralph Diaz, Secretary of California Department of Corrections and Rehabilitation; (2) Grace Song, Deputy Medical Executive; (3) Robert Mitchell, Chief Medical Executive; (4) C. Pierini, Chief Support Executive; (5) S. Gates, Chief Health Care Correspondence and Appeals Policy and Risk Management Services, and DOES 1-50 (State Wide Medical Authorization review Team ("SMART"), Gender Affirming Surgery Review Committee ("GASRC"). The FAC asserts two claims under 42 U.S.C. § 1983, both arising from the denial of plaintiff's requests for medically necessary SRS for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment, and for discrimination based on plaintiff's transgender status under the Fourteenth Amendment's Equal Protection Clause. Plaintiff sues Defendant Diaz, Song, Mitchell, Pierini, and Gates in their official capacities.

He alleges that Defendant Diaz is the Secretary of CDCR responsible for and with authority for the operation of CDCR including the administration of health care and policies governing health care. Defendant Song is the Deputy Medical Executive of Utilization Management ("UM") and served as the chair of the statewide medical authorization review team (SMART) and the General Affirming Surgery Committee (GASRC). In February 2019, Defendant Song announced the final denial of Plaintiff' sex reassignment surgery request. Defendant Robert Mitchell is the Chief Medical Executive of CCWF. In March 2019, Defendant Mitchell also announced the denial of Plaintiff's sex reassignment surgery. Defendant C. Pierini was the chief support executive and had ultimate authority over Plaintiff's request for intervention over his sex reassignment surgery and denied reassignment on Plaintiff's grievance. Defendant Gates was the Chief Health Care correspondence and appeals branch policy and risk management services. In July 2019, Defendant Gates announced the final denial of Plaintiff's grievance at the headquarters level for Plaintiff's request for SRS.

Plaintiff, a transgender man, suffers from severe gender dysphoria. Since 2017, Plaintiff has received hormone replacement therapy to treat his condition, but it has not adequately reduced his symptoms of gender dysphoria. Plaintiff suffers from severe anxiety, depression and distress caused by the incongruity between his body and his gender identity. Plaintiff was born Sharon Gonzales and as a child, when Plaintiff displayed masculine behaviors, Plaintiff would be punished and required to wear girl's clothing. Plaintiff has always presented himself as a man while in CDCR, even though he is housed at Central California Women's Correctional Facility.

In 2015, Plaintiff was diagnosed with gender dysphoria and his doctors determined it was medically necessary for him to receive treatment. Plaintiff began hormone replacement therapy in the form of testosterone injections. Plaintiff has experienced side effects from the hormone replacement therapy of increased breast size, which worsened his gender dysphoria. Plaintiff has been binding his chest, to flatten his chest, to more closely conform to his gender identity. Plaintiff is suffering suicidal ideation because of the physical changes caused by the hormone therapy.

In 2018, Plaintiff asked his primary care physician if Plaintiff would be considered for

SRS. Plaintiff physician confirmed Plaintiff's eligibility. Plaintiff has not obtained adequate masculinization of his body through the hormone treatments alone, which he has reported numerous times to his treating physician. Plaintiff exhibits symptoms of severe anxiety and depression related to gender dysphoria. Plaintiff provides a list of the mental anguish that persons with gender dysphoria can have and that the insurance companies are required to offer coverage for health care treatment related to gender transition, including SRS.

On November 27, 2018, Plaintiff's treating psychologist completed the CDCR "Institution Evaluation for Consideration of Sex Reassignment Surgery." On September 17, Plaintiff's primary care physician submitted the request for services for Plaintiff's SRS indicting that Plaintiff had been on hormones and indicating the Plaintiff wants to be male and Plaintiff requested SRS. On February 5, 2019, Defendant Song along with the SMART and GASRC denied Plaintiff's request for SRS despite Plaintiff's well-documented severe gender dysphoria and resulting mental anguish, on the grounds that it was not medically necessary, and the hormone therapy provided significant relief and is adequate treatment. The denial of Plaintiff's request for SRS was accompanied by a letter which used the wrong pronoun of "their" instead of Plaintiff's pronoun of "his" and caused an increase in Plaintiff's gender dysphonia. The letter exhibits an on-going deliberate indifference to Plaintiff's serious medical condition. Defendants have failed to take any reasonable measures to address Plaintiff's ongoing mental distress as a result of Plaintiff's gender dysphoria, which is not fully addressed by the hormone therapy Plaintiff is receiving.

Plaintiff alleges that following his denial by SMART and GASRC for SRS, Plaintiff filed a grievance. That grievance was denied by Defendant C. Perini and denied at the next level by Defendant S. Gates. After being denied, Plaintiff had to go on medication to deal with his anxiety. Plaintiff alleges that he has been documented to have gender dysphoria, has been in hormone treatment since 2017 and despite 2 years of treatment therapy, Plaintiff has serious mental distress and adverse physical side effects.

Plaintiff alleges he has been denied medically necessary surgery in violation of Equal Protection by imposing a disparate procedure that inhibit access to medically necessary treatment

raised on gender or transgender status. The 2016 Sex Reassignment Surgery ("SRS guidelines") policy established 11 criteria for consideration as part of the review by CDCR to determine whether to grant or deny SRS depending on factors that are unrelated to whether SRS is medically necessary. As a matter of CDCR policy, the GASRC is instructed to reject requests for SRS from a patient who does not have at least 2 years remaining before his/her anticipated parole of release date, regardless of whether the SRS is medically necessary. The SRS guidelines require the GASRC to consider criteria related to housing and confinement, including whether the patient can be expected to successfully and safely transfer and adjust medically and psychologically to confinement postoperatively. Under the 2016 SRS guidelines, custody factors alone can be the basis for denying requests for SRS from prisoners for reasons entirely unrelated to whether the treatment is medically necessary. This criteria conflicts with WPATH's[2] prohibition of considering housing to determine access to medically necessary treatment for gender dysphoria. Another criterion is that patients who are not approved for SRS are barred from making another application for a year, regardless of whether SRS is medically necessary. A patient should not have to wait a year if SRS is medically necessary. SRS is categorically excluded under Title 15 as a procedure that is excluded from treatment under Title 15, §3350.1.[3] Only the SRS requests are required to go to the GASRC and SMART review process. Under the temporary amendment to Title 15, the primary care physician and the UM committee are prohibited from recommending approval or denial for SRS surgery. By comparison, other treatment that may be deemed medically necessary for cisgender people, such as bilateral mastectomy, hysterectomy, cystocele or rectocele, would be reviewed under a different process

---

[2] The World Professional Association for Transgender Health (WPATH). See https://www.wpath.org/ (website last visited April 13, 2020).

[3] Former Section 3350.1 identified vaginoplasty as a surgery "that is not medically or clinically necessary [and] shall not be provided," except to correct cystocele or rectocele in cisgender women. See e.g., McQueen v. Brown, No. 215CV2544 JAM AC P, 2019 WL 949442, at *8 (E.D. Cal. Feb. 27, 2019), report and recommendation adopted, No. 215CV2544 JAM AC P, 2019 WL 2491271 (E.D. Cal. June 14, 2019). However, on July 18, 2018, before plaintiff filed his complaint, CDCR enacted emergency regulations amending Section 3350.1 to, inter alia, remove vaginoplasty from the "not medically necessary" list. Section 3350.1 was then renumbered to change without regulatory effect renumbering former section 3350.1 to new subsections 3999.200(b)-(d) filed 8-6-2018 pursuant to section 100, title 1, California Code of Regulations (Register 2018, No. 32).

that allows a treating physician to provide and institutional and medical administration to recommend the medically necessary treatment. CDCRs policies do not prohibit medical professionals from recommending other kinds of medically necessary treatment, even for treatment explicitly excluded under 15 CCR 3350.1. Plaintiff alleges that the new policy for evaluating requests for SRS is more onerous than the previous Title 15 policy and prohibits a patient's treatment provider and institution's UM Committee from recommending medically necessary treatment. The new policy for evaluating requests for SRS does not give any weight to the treating medical care provider, who had previously began recommending SRS as a treatment for patients with gender dysphoria. In response, with the 2016 guidelines and the Title 15 temporary amendment, CDCR took away the power of treating medical providers and UM Committees to recommend SRS. SRS is categorically excluded. For SRS, CDCR has a policy that transgender and other non-cisgender prisoners seeking treatment for gender dysphoria to undergo a different and much more onerous process than the one required of cisgender inmates seeking the same procedures. (ECF No. 12 p.15.) The regulation is facially discriminatory against transgender and non-cisgender prisoners seeking treatment for gender dysphoria because it makes medically necessary surgeries unavailable for such prisoner but allows treatment for cisgender prisoners (e.g., hysterectomy, bilateral mastectomy). (ECF No. 12 p.16.) Each Defendant applied the statute to discriminate against Plaintiff on basis of his gender and transgender status. In considering Plaintiff's need for SRS, each defendant failed to consider the specific circumstances of Plaintiff's gender dysphoria and need for SRS. Each defendant based their conclusions or procedures and criteria they would not have considered in determining the medical necessary treatment for cisgender prisoners. Defendants intentionally treat Plaintiff differently from cisgender prisoner seeking treatment because of Plaintiff's gender and transgender status and is held to a more onerous standard than prisoners assigned female at birth. The difference in treatment between transgender prisoner and cisgender prisoner does not further any important government interest.

Plaintiff suffers severe anxiety and depression because despite having lived his life as a man, and receiving hormone therapy since April 2017, Plaintiff is forced to live in a body with

6

female anatomy that does not match Plaintiff's deeply rooted identity. The testosterone therapy Plaintiff receives is causing other health complications which exacerbate his symptoms of gender dysphoria.

Plaintiff asks for injunctive relief enjoining Defendants to provide Plaintiff with medically necessary surgeries to treat his gender dysphoria; injunctive relief declaring CDCR and CCH policy regarding SRS as treatment for gender dysphoria, and the temporary amendments to the CCR Title 15 §3550.1(c), as unconstitutional on its face and as applied to Plaintiff; reasonable attorney fees and other relief as the court deems appropriate.

**III.    Discussion**

    **A. Official vs. Personal Capacity Suit**

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. Aholelei, 488 F.3d at 1147. However, it does not bar official capacity suit for prospective relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits ... seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25, 112 S.Ct. 358; Suever v. Connell, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 92, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); accord, Rouser v. White, 707 F.Supp.2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). To the extent that Plaintiff's request for "such other relief as the

court finds appropriate in the interest of justice" might be construed to seek money damages, a personal capacity suit would be presumed. However, Plaintiff asks for injunctive relief enjoining Defendants to provide Plaintiff with medically necessary surgeries to treat his gender dysphoria; injunctive relief declaring CDCR and CCH policy regarding SRS as treatment for gender dysphoria, and the temporary amendments to the CCR Title 15 §3550.1(c), as unconstitutional on its face and as applied to Plaintiff. Since it appears that the predominant relief Plaintiff seeks is prospective, official capacity claims would be allowed. Plaintiff sues Defendant Diaz, Song, and Mitchell, are sued in their official capacities.

Plaintiff does not state in what capacity DOES 1-50 are sued. Plaintiff was previously informed that he must state the capacity of each defendant. Plaintiff has not cured this deficiency and dismissal will be recommended for DOES 1-50 personal capacities. As discussed below in the Eighth Amendment claim, Plaintiff has failed to state facts for personal capacity against any defendant and therefore may proceed against DOES 1-50 solely in official capacities.

**B. Eighth Amendment**

Deliberate indifference to the serious medical needs of an inmate is "cruel and unusual punishment" under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To demonstrate deliberate indifference, "plaintiffs must show that [prison officials] were (a) subjectively aware of the serious medical need and (b) failed to adequately respond." Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010), vacated, 563 U.S. 915, 131 S.Ct. 1812, 179 L.Ed.2d 769 (2011), reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011).

Gender dysphoria is a serious medical condition, and the failure to provide medically necessary treatment for gender dysphoria violates the Eighth Amendment. Edmo v. Corizon, 935 F.3d 757, 785 (9th Cir. 2019). Assuming the medical need is "serious," a plaintiff must show that the defendant acted with deliberate indifference to that need. Estelle v. Gambel, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). It entails something more than medical malpractice or even gross negligence. Id. Deliberate indifference exists when a prison official

8

"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Critically, "a difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner " 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.' " Id. at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). In other words, where there has been some arguably appropriate treatment, deliberate indifference cannot be established merely by showing disagreement with the physician; rather, it requires showing that the defendant chose a course of treatment knowing that it was inappropriate.

An inmate challenging denial of treatment must allege that the denial "was medically unacceptable under the circumstances" and made "in conscious disregard of an excessive risk to [the inmate]'s health." Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). For the purposes of litigation in one case, the State of California conceded that gender dysphoria equates to a serious medical need. Rosati v. Igbinoso, 791 F.3d 1037, 1039 n.2 (9th Cir. 2015) (per curiam). The Ninth Circuit has held that a blanket denial of hormone replacement therapy and/or SRS equates to deliberate indifference. Id., at 1039-1040 (citing Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014) (holding that the

"blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that one eye is good enough for prison inmates is the paradigm of deliberate indifference" (internal quotation marks omitted)). Courts of Appeals appear to agree that neither hormone therapy nor any other particular treatment is required to treat gender dysphoria, but that a per se administrative rule barring a particular treatment constitute deliberate indifference where such treatment may be appropriate. See, e.g., Mitchell v. Kallas, 895 F.3d 492, 501 (7th Cir. 2018); Kosilek v. Spencer, 774 F.3d 63, 91 (1st Cir. 2014) (en banc); Fields v. Smith, 653 F.3d 550, 554-59 (7th Cir. 2011).

While Plaintiff alleges he is having side effects from the current hormone treatment, there is no allegation any defendant sued in their individual capacity has been informed of side effects or that Plaintiff informed any Defendant sued in their individual capacity that the treatment was ineffectual. Plaintiff has not named any medical practitioner for deliberate indifference for the side effects of hormone treatment. Succinctly put, Plaintiff's desire for a treatment different from that which he is receiving is insufficient to state a cognizable claim under the Eighth Amendment. The disagreement with a defendant's professional judgment concerning the medical care that is most appropriate under the circumstances—which is all that Plaintiff's allegations show—is insufficient to state a cognizable claim under the Eighth Amendment. Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016).

Plaintiff alleges, however, that the policy itself is deliberately indifferent. Plaintiff alleges a per se administrative rule barring treatment.[4] See Edmo v. Corizon, Inc., 935 F.3d 757 (9th Cir. 2019) (the Ninth Circuit recognized that failing to provide medically necessary treatment for gender dysphoria may violate the Eighth Amendment's prohibition of cruel and unusual punishment). There is a mechanism for review and approval of claims of medically necessary treatment, but Plaintiff alleges that the policy precludes both his treating physician and the UM Committee from providing input as to the medical necessity of SRS for Plaintiff or any person

---

[4] Indeed, 15 CCR §3999.200 does not proscribe sex/gender reassignment surgery, as long as it is medically necessary: "The Department shall only provide patients with the health care services that are medically necessary. Such services may be subject to approval or disapproval by the licensed medical, mental health or dental care supervisors, or one or more" committees.

1  requesting SRS. The policy includes factors which are unrelated to medical necessity and are used
2  to preclude SRS even when SRS is medically necessary. Liberally construing Plaintiff's amended
3  complaint, Plaintiff has stated a cognizable claim for official capacity that the policy is facially
4  and as applied deliberately indifferent.

### C. Fourteenth Amendment – Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) (citation omitted). To state a claim under the Equal Protection Clause, Plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him based on his membership in a protected class. Hartmann, 707 F.3d at 1123; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

A plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564, 120 S.Ct. 1073. Further, to establish a violation of the Equal Protection Clause, the prisoner must allege discriminatory intent. See Washington v. Davis, 426 U.S. 229, 239-240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); Serrano, 345 F.3d at 1081-82; Freeman v. Arpio, 125 F.3d 732, 737 (9th Cir. 1997).

The Ninth Circuit has recognized that discrimination against an individual based on his or her transgender status is actionable under the Equal Protection Clause under an intermediate scrutiny standard. Karnoski v. Trump, 926 F.3d 1180, 1202 (9th Cir. 2019) (military); accord, Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1119-21 (N.D. Cal. Mar. 31, 2015) (CDCR classification making it "more difficult" for a transgender female inmate to receive vaginoplasty than it is for a cisgender female inmate is discriminatory and subject to intermediate scrutiny under the Equal Protection Clause), dismissing and remanding appeal, Norsworthy v. Beard, 802

F.3d 1090 (9th Cir. 2015) (appeal deemed moot due to inmate's release from custody); McQueen v. Brown, 2018 WL 1875631, at *3, 2018 U.S. Dist. LEXIS 66377, at *8-9 (E.D. Cal. Apr. 19, 2018), report and recommendation adopted, 2018 WL 2441713, 2018 U.S. Dist. LEXIS 91170 (E.D. Cal. May 31, 2018) (Case No. 2:15-cv-2544 JAM AC P) (prison inmate); Duronslet v. County of Los Angeles, 266 F. Supp.3d 1213, 1221-23 (C.D. Cal. 2017) (county restrooms); F.V. v. Barron, 286 F. Supp. 3d 1131 (D. Idaho Mar. 5, 2018) (birth certificates).

Plaintiff claims he is being treating differently than cisgender persons, who are getting medically necessary surgeries. Plaintiff alleges that transgender people are being discriminated against because the policy precludes treating physicians or the UM Committees from making the finding that SRS is medically warranted. Plaintiff alleges he is being treated unequally because other kinds of medically necessary treatments can be recommended by a physician but that solely SRS treatment cannot be recommended. A woman seeking surgeries (e.g. mastectomy, hysterectomy, ovariectomy, vaginectomy) would be permitted to demonstrate that the medical services were medically necessary, but Plaintiff is not likewise permitted to demonstrate that SRS is medically necessary. Liberally construing the first amended complaint, Plaintiff states a cognizable claim that the policy is discriminatory based on Plaintiff's transgender status.

**D. Grievance/Complaint Process**

Plaintiff alleges that Defendants Pierini and Gates could have failed to approve the grievances Plaintiff filed challenging the denial of his requested SRS surgery. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); see also Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). Denial or refusal to process a prison

12

grievance is not a constitutional violation. Rushdan v. Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018). Accordingly, Plaintiff fails to state a cognizable claim against Defendant Pierini and Gates arising out of the screening, investigation or processing of his grievances or complaints.

### E. DOE Defendants

Plaintiff names Doe defendants in this action. However, unidentified, or "John/Jane Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants. As a result, Plaintiff will have to identify each Doe defendant before the complaint can be served on those defendants.

### F. Intentional Infliction of Emotional Distress

Plaintiff alleges that when the Defendants returned his denial of the SRS surgery, the SRS denial was accompanied by a letter which used the wrong pronoun of "their" instead of Plaintiff's pronoun of "his" and caused an increase in Plaintiff's gender dysphonia, which exhibits Defendants' on-going deliberate indifference to Plaintiff's serious medical condition. "In order to establish a claim for intentional infliction of emotional distress under California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004). "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress' is actionable." Brooks v. United States, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998). To the extent Plaintiff is seeking to allege emotional distress arising from the use of the incorrect pronoun in the letter accompanying the denial of SRS surgery, Plaintiff does not state a claim. Nothing in the complaint indicates that any defendant's conduct was

outrageous or that any defendant intended or recklessly disregarded the probability of causing emotional distress.

### IV. Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff states cognizable claims against Defendants Diaz, Song, Mitchell, and DOES 1-50 in their official capacities for purposes of injunctive relief, for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment, and for discrimination based on Plaintiff's transgender status under the Fourteenth Amendment's Equal Protection Clause. Plaintiff fails to state any claim against Defendant Pierini or Defendant Gates or any other claim.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed on March 24, 2020 against Defendants Diaz, Song, Mitchell, and DOES 1-50, in their official capacities for purposes of injunctive relief, for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment, and for discrimination based on Plaintiff's transgender status under the Fourteenth Amendment's Equal Protection Clause.

2. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

///
///
///
///
///

Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 13, 2020**   /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE