1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNI GONZALES (aka Sharon Gonzales), | Case No.  1:19-cv-01467-JLT-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION TO DISMISS |
| v. | (ECF No. 42) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*, | **FOURTEEN (14) DAY DEADLINE** |
| Defendants. | |

Plaintiff Giovanni Gonzales, aka Sharon Gonzales, ("Plaintiff") is a state prisoner

proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

This action proceeds on Plaintiff's first amended complaint against Defendants Diaz, Song,

Mitchell, and Does 1–50[1] in their official capacities for purposes of injunctive relief, for

deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment,

and for discrimination based on Plaintiff's transgender status under the Fourteenth Amendment's

Equal Protection Clause.

///

---

[1] A ruling on Plaintiff's motion to substitute the identities of Defendants Does 1–50, (ECF No. 27), was deferred pursuant to the Court's November 10, 2022 order resetting the deadline for Defendants to re-file their motion to dismiss, (ECF No. 39).  In light of the instant findings and recommendations, the Court again finds that a substitution of these defendants—all sued in their official capacities—is unnecessary to resolve the pending motion to dismiss.

1

I.      **Relevant Allegations in First Amended Complaint**

Plaintiff is currently housed at Central California Women's Facility ("CCWF") in Chowchilla, California, where the events detailed in the first amended complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) Ralph Diaz, Secretary of California Department of Corrections and Rehabilitation ("CDCR"); (2) Grace Song, Deputy Medical Executive; (3) Robert Mitchell, Chief Medical Executive; and (4) Does 1–50, State Wide Medical Authorization Review Team ("SMART"), Gender Affirming Surgery Review Committee ("GASRC").  Plaintiff sues all defendants in their official capacities.

Plaintiff alleges that Defendant Diaz is the Secretary of CDCR responsible for and with authority for the operation of CDCR, including the administration of health care and policies governing health care.  Defendant Song is the Deputy Medical Executive of Utilization Management ("UM") and served as the chair of the SMART and GASRC.  In February 2019, Defendant Song announced the final denial of Plaintiff's sex reassignment surgery ("SRS")[2] request.  Defendant Mitchell is the Chief Medical Executive of CCWF.  In March 2019, Defendant Mitchell also announced the denial of Plaintiff's SRS.

In 2015, Plaintiff was diagnosed with gender dysphoria and his doctors determined it was medically necessary for him to receive treatment.  Since 2017, Plaintiff has received hormone replacement therapy to treat his condition, but it has not adequately reduced his symptoms of gender dysphoria.  Plaintiff has experienced side effects from the hormone replacement therapy of increased breast size, which worsened his gender dysphoria.  Plaintiff is suffering suicidal ideation because of the physical changes caused by the hormone therapy.

In 2018, Plaintiff asked his primary care physician if Plaintiff would be considered for SRS.  Plaintiff's physician confirmed Plaintiff's eligibility.  On November 27, 2018, Plaintiff's treating physician completed the CDCR "Institution Evaluation for Consideration of Sex Reassignment Surgery."  On February 5, 2019, Defendant Song, along with the SMART and GASRC, denied Plaintiff's request for SRS despite Plaintiff's well-documented severe gender

---

[2] In 2018, when CDCR revised its Supplement to the Gender Dysphoria Care Guide, CDCR replaced the term "sex reassignment surgery ("SRS")" with "gender affirming surgery ("GAS")."  The terms may be used interchangeably.

1 dysphoria and resulting mental anguish, on the grounds that it was not medically necessary, and

2 the hormone therapy provided significant relief and is adequate treatment.  Defendants have

3 failed to take any reasonable measures to address Plaintiff's ongoing mental distress as a result of

4 Plaintiff's gender dysphoria, which is not fully addressed by the hormone therapy Plaintiff is

5 receiving.  Plaintiff alleges that he has been documented to have gender dysphoria, has been in

6 hormone treatment since 2017 and despite 2 years of treatment therapy, Plaintiff has serious

7 mental distress and adverse physical side effects.

8      Plaintiff alleges he has been denied medically necessary surgery in violation of Equal

9 Protection, by imposing a disparate procedure that inhibits access to medically necessary

10 treatment raised on gender or transgender status.  The 2016 SRS guidelines policy established 11

11 criteria for consideration as part of the review by CDCR to determine whether to grant or deny

12 SRS depending on factors that are unrelated to whether SRS is medically necessary.  As a matter

13 of CDCR policy, the GASRC is instructed to reject requests for SRS from a patient who does not

14 have at least 2 years remaining before his/her anticipated parole or release date, regardless of

15 whether the SRS is medically necessary.  The SRS guidelines require the GASRC to consider

16 criteria related to housing and confinement, including whether the patient can be expected to

17 successfully and safely transfer and adjust medically and psychologically to confinement

18 postoperatively.

19      Under the 2016 SRS guidelines, custody factors alone can be the basis for denying

20 requests for SRS from prisoners for reasons entirely unrelated to whether the treatment is

21 medically necessary.  This criteria conflicts with WPATH's[3] prohibition of considering housing

22 to determine access to medically necessary treatment for gender dysphoria.  Another criterion is

23 that patients who are not approved for SRS are barred from making another application for a year,

24 regardless of whether SRS is medically necessary.  SRS is categorically excluded under Title 15,

25 as a procedure that is excluded from treatment under Title 15, § 3350.1.[4]  Only the SRS requests

26
27 [3] The World Professional Association for Transgender Health ("WPATH").  *See* https://www.wpath.org/ (website last visited March 5, 2024).

28 [4] Former section 3350.1 identified vaginoplasty as a surgery "that is not medically or clinically necessary [and] shall not be provided," except to correct cystocele or rectocele in cisgender women.  *See e.g.*, *McQueen v. Brown*, No.

3

are required to go to the GASRC and SMART review process.  Under the temporary amendment to Title 15, the primary care physician and the UM Committee are prohibited from recommending approval or denial for SRS surgery.

By comparison, other treatment that may be deemed medically necessary for cisgender people, such as bilateral mastectomy, hysterectomy, cystocele or rectocele, would be reviewed under a different process that allows a treating physician to provide, and institutional and medical administration to recommend, the medically necessary treatment.  CDCR's policies do not prohibit medical professionals from recommending other kinds of medically necessary treatment, even for treatment explicitly excluded under 15 CCR 3350.1.  Plaintiff alleges that the new policy for evaluating requests for SRS is more onerous than the previous Title 15 policy and prohibits a patient's treatment provider and institution's UM Committee from recommending medically necessary treatment.  The new policy for evaluating requests for SRS does not give any weight to the treating medical care provider, who previously began recommending SRS as a treatment for patients with gender dysphoria.

In response, with the 2016 guidelines and the Title 15 temporary amendment, CDCR took away the power of treating medical providers and UM Committees to recommend SRS.  SRS is categorically excluded.  For SRS, CDCR has a policy that transgender and other non-cisgender prisoners seeking treatment for gender dysphoria to undergo a different and much more onerous process than the one required of cisgender inmates seeking the same procedures.  (ECF No. 12, p. 15.)  The regulation is facially discriminatory against transgender and non-cisgender prisoners seeking treatment for gender dysphoria because it makes medically necessary surgeries unavailable for such prisoners but allows treatment for cisgender prisoners (e.g., hysterectomy, bilateral mastectomy).  (*Id.* at 16.)

///

---

215CV2544 JAM AC P, 2019 WL 949442, at *8 (E.D. Cal. Feb. 27, 2019), report and recommendation adopted, No. 215CV2544 JAM AC P, 2019 WL 2491271 (E.D. Cal. June 14, 2019).  However, on July 18, 2018, before Plaintiff filed his complaint, CDCR enacted emergency regulations amending Section 3350.1 to, *inter alia*, remove vaginoplasty from the "not medically necessary" list.  Section 3350.1 was then renumbered to change without regulatory effect renumbering former section 3350.1 to new subsections 3999.200(b)-(d) filed 8-6-2018 pursuant to section 100, title 1, California Code of Regulations (Register 2018, No. 32).

Each Defendant applied the statute to discriminate against Plaintiff on basis of his gender and transgender status.  In considering Plaintiff's need for SRS, each defendant failed to consider the specific circumstances of Plaintiff's gender dysphoria and need for SRS.  Each defendant based their conclusions on procedures or criteria they would not have considered in determining the medically necessary treatment for cisgender prisoners.  Defendants intentionally treat Plaintiff differently from cisgender prisoners seeking treatment because of Plaintiff's gender and transgender status and is held to a more onerous standard than prisoners assigned female at birth.  The difference in treatment between transgender prisoners and cisgender prisoners does not further any important government interest.

Plaintiff suffers severe anxiety and depression because despite having lived his life as a man, and receiving hormone therapy since April 2017, Plaintiff is forced to live in a body with female anatomy that does not match Plaintiff's deeply rooted identity.  The testosterone therapy Plaintiff receives is causing other health complications which exacerbate his symptoms of gender dysphoria.

Plaintiff asks for injunctive relief enjoining Defendants to provide Plaintiff with medically necessary surgeries to treat his gender dysphoria; injunctive relief declaring CDCR and CCHS policy regarding SRS treatment for gender dysphoria, and the temporary amendments to the CCR Title 15 § 3350.1(c), as unconstitutional on its face and as applied to Plaintiff; and reasonable attorney fees and other relief as the court deems appropriate.

**II.    Defendants' Request for Judicial Notice**

Defendants request that the Court take judicial notice of excerpts from Plaintiff's medical records, CDCR policy guidelines for review of requests for GAS, and court records from *Plata v. Brown*, No. 3:01-cv-01351 (N.D. Cal.).  (ECF No. 24.)  Plaintiff did not respond to the request for judicial notice.

Rule 201(b) of the Federal Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

Defendants' request for judicial notice is granted.  The content of records and reports of administrative bodies are proper subjects for judicial notice under Rule 201(d).  *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).  A court may also take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Based on the foregoing, on February 5, 2019, the GASRC recommended a finding of "Not Approved" for Plaintiff's request for GAS, (ECF No. 24, p. 5), on March 4, 2019, the SMART did not approve Plaintiff's request for GAS, (*id.* at 7), and on August 4, 2020, the SMART approved Plaintiff's request for GAS, (*id.* at 11).[5]  Plaintiff's GAS was completed on September 2, 2022.  (ECF No. 36.)

## III.    Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A.    Legal Standard

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact."  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations.  *Thornhill Publ'g Co.*, 594 F.2d at 733.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden

---

[5] A memorandum from the GASRC was apparently issued on July 21, 2020, however that exhibit appears to be a duplicate of Exhibit B.  (*Compare* ECF No. 24, p. 7 *with* ECF No. 24, p. 9.)

1  of establishing that such jurisdiction does in fact exist.  *Thornhill Publ'g Co.*, 594 F.2d at 733.

2  A Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety,

3  on its face fails to allege facts sufficient to establish subject matter jurisdiction.  *Savage v.*

4  *Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 n.2 (9th Cir. 2003); *Thornhill Publ'g Co.*,

5  594 F.2d at 733.  Challenges to jurisdiction under Rule 12(b)(1) may be facial (i.e., on the

6  pleadings) or factual, permitting the court to look beyond the complaint.  *Savage*, 343 F.3d at

7  1039–40, n.2; *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a factual challenge,

8  "the district court is not restricted to the face of the pleadings, but may review any evidence, such

9  as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."

10  *McCarthy*, 850 F.2d at 560; *see also Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th

11  Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion

12  into one for summary judgment).

13  **B.**    **Parties' Positions**

14  Defendants contend that since Plaintiff filed suit, CDCR approved Plaintiff's GAS request

15  and provided him with the requested surgery, thereby mooting his claim for injunctive relief in

16  the form of the surgery.  While Plaintiff also seeks declaratory relief regarding the

17  constitutionality of CDCR's GAS policies, having been approved for and provided surgery,

18  Plaintiff is no longer subject to those policies.  Further, Plaintiff's claim for declaratory relief is

19  barred by the *Plata v. Newsom* class action.  The Court therefore lacks subject matter jurisdiction

20  over Plaintiff's claims for relief in this case, and the case must be dismissed.

21  In opposition, Plaintiff argues that his suit should be permitted to continue based on the

22  Court's screening and service orders.  Plaintiff wishes to pursue all remaining claims for relief,

23  including: (1) enter injunctive relief declaring CDCR and CCH[C]S policies regarding SRS as a

24  treatment for gender dysphoria, reflected at a minimum, in the temporary amendments to

25  California Code of Regulations, Title 15, Section 3350.1(c) unconstitutional on its face and as

26  applied to Plaintiff; (2) award reasonable attorneys' fees and costs to Plaintiff pursuant to 42

27  U.S.C. section 1988; and (3) such other relief as the Court finds appropriate in the interest of

28  justice.  (ECF No. 36, p. 2 (citing FAC).)  Plaintiff states that the Court's findings and

recommendations at screening stated that the "other relief" requested "might be construed to seek money damages," which would presume a personal capacity suit.  (ECF No. 14, pp. 7–8.) Plaintiff argues that he was actually seeking to file suit against Defendants in both official and personal capacities, but believed he could only choose one and therefore chose official capacity so he could pursue his claims for injunctive relief.  Although Defendants argue that Plaintiff is no longer subject to CDCR's GAS policies after he was approved for and provided surgery, Plaintiff's claim is that he was subject to the policy.  Plaintiff argues that he had to file suit to be granted surgery, showing that the constitutionality of CDCR's GAS policies are still at issue and are a part of his suit.  The fact that Plaintiff had GAS does not change the frustration, mental anguish, anxiety, suicidal ideation, and stress and suffering the policies caused Plaintiff and the fact that to receive relief he was forced to file suit.  With respect to the *Plata v. Newsom* class action, Plaintiff is not part of a class action, and has brought suit as an individual who was adversely and unconstitutionally affected by CDCR policies.

### C.     Analysis

Plaintiff does not dispute that his request for injunctive relief as to providing him with GAS is now moot.  Therefore, the remaining issue is whether Plaintiff's remaining requests for relief are also moot or otherwise barred by other pending litigation.

In light of the completion of Plaintiff's requested surgery, the Court finds that it lacks subject matter jurisdiction to declare CDCR's GAS policies unconstitutional.  Plaintiff is no longer subjected to the GAS policies, and therefore there is no longer a "case or controversy" before the Court.  *See Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) (citing 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)).  Plaintiff is essentially arguing that even though his as-applied challenge is now moot, he should be permitted to pursue his facial challenge to the GAS policies.  However, Plaintiff has failed to allege sufficient facts demonstrating that the GAS policies would always violate the Eighth Amendment, no matter which inmates the policy is applied to.  *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a [policy] . . . must establish that no set of circumstances exists under which the [policy] would be valid.  The fact

1   that the [policy] might operate unconstitutionally under some conceivable set of circumstances is

2   insufficient to render it wholly invalid[.]").  In the first amended complaint, Plaintiff alleged that

3   the policy constituted a per se administrative rule barring treatment, (*see* ECF No. 14, p. 10), but

4   he was nevertheless approved for and provided the requested surgery.  Aside from Plaintiff's

5   speculation that he was required to file this lawsuit in order to obtain the approval, there is no

6   indication in the record that Plaintiff's surgery was approved using any criteria other than those

7   provided for in the existing GAS policies.  (ECF No. 24, p. 11.)

8          Plaintiff's argument that he should be permitted to challenge the constitutionality of the

9   GAS policies because he was previously subjected to the policies and suffered mental anguish

10  during that time, is unpersuasive.  Plaintiff did not seek relief in the form of damages for such

11  mental anguish, and Plaintiff may not recover for mental or emotional injury, alone, without a

12  prior showing of physical injury from the particular constitutional violation.  *See* 42 U.S.C.

13  § 1997e(e).  The Court further declines to find that the "other relief" requested in the first

14  amended complaint includes a request for damages.  "Although we construe pleadings liberally in

15  their favor, *pro se* litigants are bound by the rules of procedure."  *Ghazali v. Moran*, 46 F.3d 52,

16  54 (9th Cir. 1995).  Federal Rule of Civil Procedure 8 requires a pleading to contain "a demand

17  for the relief sought."  Fed. R. Civ. P. 8(a)(3).  Plaintiff included specific requests for injunctive

18  and declaratory relief, and if he intended to seek damages, he could have included such a request.

19         Plaintiff's request for attorneys' fees and costs is also not sufficient for the Court to retain

20  subject matter jurisdiction over this action.  Plaintiff is representing himself in this action and is

21  not represented by an attorney.  As such, he is not entitled to recover attorney's fees, even if he

22  prevails.  *Gonzales v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987).

23         Finally, even assuming that the Court retained subject matter jurisdiction over this action,

24  Plaintiff's claim for declaratory relief regarding the GAS policy is barred by the *Plata v. Newsom*

25  class action.  The systemic relief Plaintiff still seeks—a declaration that the GAS policy is

26  unconstitutional on its face—falls squarely within the purview of the *Plata* court.  While Plaintiff

27  states that he is not a member of any class action, the systemic reform he seeks would

28  nevertheless be duplicative of, and therefore barred by, the relief sought in *Plata*.  *See Pride v.*

9

*Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013).

**IV.    Recommendations**

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1. Defendant's motion to dismiss, (ECF No. 42), be granted; and

2. This action be dismissed, without prejudice, for lack of subject matter jurisdiction.

* * *

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __March 11, 2024__            ___/s/ *Barbara A. McAuliffe*___
                                       UNITED STATES MAGISTRATE JUDGE

10